Curia, per

Frost, J.
The facts material to the understanding of the points decided, are, that the title to the land in dispute was vested in the plaintiffs prior to November, 1841, when the defendant purchased a lease of it for seven years, at a sale by the sheriff under a tax execution. The defendant entered in January, 1842, but did not take a deed from the sheriff until October, 1844, which is the date of the deed. The plaintiffs’ writ was sued out in September, 1843. Before it was sued out, but after the entry by the defendant, several of the plaintiffs had aliened their interest in the land.
The questions made in the case are, whether an action of trespass to try title can be maintained by a party who *32 had aliened or been divested of the title before the suit was commenced, for the recovery of damages and mesne profits against a trespasser on his possession before the title was divested; whether the sale of the seven years lease of the land in dispute to the defendant, was void on account of alleged irregularity in the tax execution ; and whether, if the sale was valid, the deed of lease should have relation back to the date of the sale, so as to protect the defendant from the plaintiffs’ claim for damages.
Assuming the affirmative of the first question, which, however, it is not necessary nor intended to decide, the plaintiffs cannot retain their verdict, if the sale under the tax execution is valid, and the deed have relation back from its date and delivery to the time of sale.
It is necessary, in deciding the validity of the sale under the tax execution, to advert to the Acts of the Legislature, regulating the manner of making returns for taxes, and the process for recovery in case of default to pay them.
The Act of 1808, 5 Stat. 566, directs that every person or his agent shall make a return for taxation of the property held in his own right, or in the right of any person he may represent. The Act of 1813, 5 Stat. 705, requires that the person making a return of property, shall take an oath that it contains all the property which he may be “possessed of, interested in, or entitled to in his own right, or in the right of any other person, either as guardian, trustee, attorney, agent, or in any other manner whatsoever.” If the tax assessed be not paid, the Act of 1788, 5 Stat. 52, directs the tax collector to levy the sum due, by warrant signed and sealed and directed to a constable, requiring him to levy the same by distress and sale of the defaulter’s property ; and if no such distress can be found, and the defaulter shall neglect or refuse to point out lands or produce goods, whereon the moneys so assessed may be forthwith levied, then the constable shall take the body of the defaulter and commit him to jail. The form of the warrant prescribed, which is still used, is to the following effect: “A. B., Tax Collector of, &c. to constable, <fcc. Whereas hath been duly assessed by me, the subscriber, tfec. the sum of dollars, for defraying the *33 charges, &c. which hath neglected to pay : These are, therefore, to command yon to levy, by distress and sale of the lands, goods and chattels of the said the sum of , &c.” The form of the warrant then proceeds to direct the constable, if the person shall neglect or refuse to point out lands, tfcc. by which the amount of the execution may be levied, to commit him to jail. The Act of 1791, 1 Faust, 169, directs the tax collector, after levy on the property of any defaulter, to advertise the sale thereof for three weeks, in a newspaper, or by notice posted in three public places of the parish or district; in which notice shall be expressed the sum due by the defaulter, and the property levied on ; and sales shall be made at the Court House. If the sale be of land, the same shall not be sold for a period exceeding seven years. By the Act of 1802, 5 Stat. 449, tax collectors are required to place their warrants, for collection, in the hands of the'sheriff, who is also, by the Act, required to collect the poor tax, and by the Act of 1823, 6 Stat. 227, the road tax.
From this summary, it appears that a return may be made, by any person, of the property of which he may be possessed, as trustee, guardian, agent, or in any manner whatever; that if the assessed tax be not paid, the tax collector shall, ty warrant, require the sheriff to levy the Same by distress and sale of the'defaulter’s property ; and if no such distress can be found, and property be not shewn by the defaulter, that his body be taken and imprisoned. In the form of the warrant prescribed by the statute, both these processes are combined. The union of them in the same warrant is merely a matter of convenience, since the Act provides that the process against the person shall be enforced only in case no distress of property can be made. The warrants, if separately issued, would substantially comply with the provisions of the Act, and be more proper when issued for the collection of taxes assessed on the property of a deceased person. Any informality, therefore, in the warrant against the person, will not vitiate that directing a distress and sale of property.
In the printed form of the warrant under which the sale was made, the first blank was filled with the words, *34 “ Est. of Mrs. E. A. Hammond,” and the following blanks were filled with the word “ Est.” only ; so that the warrant read, “ Whereas the est. of Mrs. E. A. Hammond hath been duly assessed by me, the subscriber, the sum of dollars, which the said ‘est.’ hath neglected to pay; these are therefore to command you to levy by distress and sale of the lands and goods of the said 1 est.’ the sum of dollars,” &c. With careless inadvertence of the absurd effect, the blanks for the arrest of the body are filled with the word “ est.”
The abbreviation very obviously signifies estate, meaning of Mis. Hammond. All that part of the warrant which directs an arrest of the person, may be struck out, and yet the warrant be legal and valid. The recital, that the estate of Mrs. Hammond is indebted, may not consist with strict legal precision, but the executory part of the warrant conforms to the requirement of the statute, when it directs the sheriff to levy the amount stated of the lands and goods of the estate of Mrs. Hammond, if the entire title had been vested in her during her life. If, after reciting that the estate of Mrs. Hammond had been assessed dollars, the next blank had been filled so as to read, “ which Samuel Hammond, trustee, has neglected to pay,” every legal and critical exception would have been obviated. The direction to levy the warrant of the lands and goods of the estate of Mrs. Hammond is as intelligible and certain as if it had been expressed in the formula of an execution against an executor or administrator. The only informality in the warrant, then, consists in the recital, that the estate of Mrs. Hammond had neglected to pay. .
But it is insisted that the warrant should express the name of some person, who is liable to pay the tax." This would be more formal, and should be done ;. but in some cases it would be a mere formality, as in the case of the property oí an absentee returned by an agent, and in all cases of the return of the property of a deceased person, unless it be held that the body of the executor or administrator may be taken under the warrant. The common apprehension, overlooking the legal representative, is directed immediately to the property of one deceased, and all cred *35 its, liabilities and property are referred to his estate. That mode of expression is familiarly understood, and there can be little doubt that, in almost every instance, the property of a deceased is returned for taxation as his estate. The executor or other legal representative would have the same notice, whether he were named in the warrant or not; nor would the enforcement of the warrant against the property liable to distress and sale, be varied.
It is further objected, that the land was not the estate of Mrs. Hammond, but vested in the plaintiffs at her death. It was returned by Col. Hammond, as it had been ever since the death of Mrs. Hammond. He must be considered the plaintiffs’ agent, and his act their act. if they had returned the property as the estate of Mrs. Hammond, they could not complain that execution had accordingly been levied. If the owner does not return his property nor pay the tax, it is not a subject of just complaint, if, having been returned by his agent in the name of another, the State should proceed against it, as if the return was true. It would cause extreme embarrassment, if the tax collector were required to look beyond the return, and investigate the legal title to all the property returned for taxation, at the peril of a trespass, and of an ineffectual levy. The property, whoever may be the owner, is chargeable for the assessed tax, which justifies a levy and sale, if it be not paid; and no injury can be done, in a case like the present, to any citizen who properly respects his obligation to the State, for the payment of his portion of the common charge of the government, or who exercises the most ordinary vigilance over his property.
Yery strict and technical adherence to forms, should not be required from a class of public functionaries, whose duties are not commonly supposed to require any peculiar qualifications, and the term of whose office is so short and precarious, that few derive a knowledge of its duties from experience. If the process which the tax collectors are authorized to issue, does, in substance and effect, comply with the provisions of law, and afford to the owner of property the notice which may be necessary for its protection, formal and technical exceptions may, without incon *36 venience or danger, be disregarded. In this case, Cob Hammond had ample notice of the proceeding under the warrant. It was lodged with the sheriff in May, and he was notified of it. The sale, advertised for September, was postponed two months. One .or more of the plaintiffs also had notice. No means of protection, which could have availed if the name of the trustee had been inserted in the warrant, have been lost by the omission.
But the plaintiffs cannot retain the verdict. The action cannot be supported for the recovery of the land, on account of the misjoinder of the plaintiffs, several having conveyed their interest in the land before the action was brought. A non-suit for this cause was refused at the trial, on the ground that the action might be maintained for the mesne profits before alienation. The sale, under the execution, was supported by the Circuit Judge; and the sheriff’s deed held to transfer to the defendant a good term for years. The defendant’s purchase, however, was allowed as a defence to the recovery of rent, only from the execution and delivery of the deed, which created the term. Butin McCall vs. Campbell, MS. cases,Dec. 1843, it was decided that a sheriff’s conveyance to a purchaser, many years after the sale, put the purchaser in the same condition he would have been, had the title been executed cotemporaneously with the sale ; and a verdict for mesne profits, between the time of the purchase and-the execution of the title deed, was set aside. The defendant, in this case, did not enter until after the purchase from the sheriff. The plaintiffs, therefore, cannot recover mesne profits — and a non-suit is ordered.
Richardson and O’Neall, JJ. concurred.
Evans and Wardlaw, J'J. We dissent, on the ground that the sheriff’s sale was void, as made under a void execution.